UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Karen Ann Dickson,**

        **Plaintiff,**        **Civil Action No. 11-10281**

   **vs.**                          **District Judge Avern Cohn**

**Commissioner of Social**       **Magistrate Judge Mona K. Majzoub**
**Security,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Karen Dickson has filed this civil action seeking judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security income and disability benefits. (Dkt. 1.) *See* 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment. (Dkt. 13, 14.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 3.) The Court has reviewed the pleadings, dispenses with oral argument, and is now ready to issue its report and recommendation.[1]

**I.    Recommendation**

Plaintiff has raised three issues why the Commissioner of Social Security and its administrative law judge's ruling denying Plaintiff benefits is incorrect:

    I.    Is the ALJ's finding that Plaintiff's fibromyalgia was not a severe impairment unsupported by substantial evidence and inconsistent with the definition of a "severe impairment?"

---

[1]E.D. Mich. LR 7.1(f)(2).

    II.       Did the ALJ completely fail to render any analysis regarding the impact of Plaintiff's morbid obesity upon her claim of disability?

    III.      Did the ALJ err in failing to account for the side effects of Plaintiff's medications in finding that she could still perform work?

Defendant argues the opposite: that substantial evidence supported the ALJ's finding; that the ALJ properly considered Plaintiff's obesity; and that the ALJ properly considered the evidence in determining Plaintiff's residual functional capacity.

Because the Court finds that substantial evidence supports the ALJ and the Commissioner's decision, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## II. Report

### A. Facts

#### 1. Plaintiff's alleged disabling impairments

Plaintiff states that she has degenerative disc disease, asthma, arthritis, sleep apnea, carpal tunnel syndrome, and that she is obese. (AR at 203.) These conditions, she alleges, prevent her from sitting or standing for long periods of time. (*Id.*) She states she can only walk twenty feet before her back starts to hurt or she gets out of breath. (*Id.*) She also states that her hands go numb because she has permanent nerve damage in her right hand. (*Id.*) She states that she is in constant pain. (*Id.*) Medications do not help, she argues, because she has built up a tolerance to them. (*Id.*) And she states that she no longer can take any of the helpful medications because of her insurance (or, presumably, lack thereof). (*Id.*) Plaintiff also alleges that she suffers from fibromyalgia.

#### 2. Procedural background

In February, 2008, Plaintiff filed for supplemental security income, disability, and disability

insurance benefits. (AR at 17.) On April 9, 2008, the SSA notified Plaintiff that it was denying her request for benefits. (*Id*. at 73.) The SSA found that Plaintiff could perform light duty work and carry out her daily activities. (*Id.*) On June 16, 2008, Plaintiff requested a hearing with an administrative law judge (ALJ). (*Id*. at 82.) The ALJ held hearings on August 31, 2009, and February 16, 2010. On March 19, 2010, in a written decision, the ALJ denied Plaintiff her benefits request. (*Id*. at 17.) Plaintiff sought review of the ALJ's decision. (*Id*. at 13.) On November 23, 2010, the Appeals Council denied Plaintiff's appeal of the ALJ's decision. (*Id*. at 1.) On January 21, 2011, Plaintiff filed this case seeking judicial review of the Commissioner's decision. (Dkt. 1.)

### 3.    Medical evidence

The parties have submitted Plaintiff's medical records since 2000. The Court has reviewed the entire record, but only highlights the medical evidence that the Court finds is relevant to its recommendation–from January, 2005, until the present.

- February, 2006: Plaintiff visited the Sterling Heights Medical Center. (AR at 258.) She primarily went for sleep problems. (*Id.*) The examining physician noted that she was morbidly obese. (*Id.*) The physician also noted that Plaintiff was unable to exercise due to back and knee pain. (*Id.*) The physician stated that Plaintiff was in no acute respiratory distress, could communicate in full sentences, and was generally "very pleasant." (*Id*. at 259.)

- February, 2006: a physician noted that Plaintiff had leg and back pain. (*Id*. at 281.) Again, though, the physician stated that Plaintiff was well-nourished, well-developed, and alert. (*Id.*) At that examination, the physician also noted that Plaintiff's leg and back pain was "probably arthritic" and not nerve-related. (*Id.*)

- October, 2006: after a follow-up examination for her sleep issues, the physician noted that Plaintiff stated that she had increased energy and was "able to move more at home." (*Id*. at 271.)

- November, 2006: after a car accident, Plaintiff was seen at the Warren Medical Center. (*Id*. at 270.) There, the physician found that Plaintiff was alert and oriented, well-nourished and well developed. (*Id.*)

- December, 2007: Plaintiff visited the Warren Medical Center. (AR at 264.) There, she presented with swollen lymph nodes on her neck. (*Id.*) The physician noted that Plaintiff's medical history included: asthma, chronic rhinosinusitis, a history of ruptured disk in her lumbar spine, severe degenerative joint disease, morbid obesity, and sleep apnea. (*Id.*) The physician also noted that Plaintiff did not appear to be in any apparent distress, for she was "communicative" and was able to "discuss[] her situation very appropriately[.]" (*Id.*) At that examination, Plaintiff's abdomen was soft and had no abnormal enlargement or tenderness. (*Id.*)

- March, 2008: Plaintiff was seen by the Sierra Medical Group, PLC, for the Social Security Administration. (AR at 334.) That report indicates that Plaintiff had had lower back pain the last several years. (*Id.*) The reports shows that Plaintiff reported the pain as "aching" in character, with an intensity of 0-5/10. (*Id.*) That report provided nothing out of the ordinary. The diagnosis shows that the examiner found that Plaintiff was morbidly obese, had lower back pain (but with no musculoskeletal or neurological abnormalities), had pain in the left hand and both knees (although both knee joints were unremarkable), and that she no longer had asthma or sleep apnea issues. (*Id.* at 336.)

- July, 2009: the Henry Ford Hospital System saw Plaintiff. (AR at 358.) The report of that visit shows that Plaintiff's primary complaint was back pain. (*Id.*) The physician noted that Plaintiff "continue[d] to have some pain in the neck and in the shoulders as well as . . . pain in the thoracolumbar area." (*Id.*) The physician also noted that her range of motion had decreased. (*Id.*) Despite her ailments, the physician stated that he was going to recommend "conservative treatment," refer her to a pain clinic, and give her a prescription for physical therapy. (*Id.*)

- August, 2009: Plaintiff was again seen at the Henry Ford Hospital System. (*Id.* at 386.) Dr. David D. Kim saw her. (*Id.*) Dr. Kim reported that Plaintiff complained of constant pain in her neck, shoulders, upper and lower spine, torso, hips, legs, and knees. (*Id.*) Dr. Kim stated that Plaintiff said she had suffered this pain since 2005, but that the pain had become more debilitating as time has passed on. (*Id.*) The pain increased when she stood or walked, Dr. Kim reported. (*Id.*) Dr. Kim also reported that Plaintiff stated that some medications relieved the pain. (*Id.*) During this examination, Dr. Kim noted that Plaintiff sat on the exam table "visibly in pain." (*Id.* at 387.) Dr. Kim stated that Plaintiff had "failed several conservative measures [of treatment.]" (*Id.* at 388.) Dr. Kim's "assessment" was for fibromyalgia. (*Id.* at 388.) He also suggested ruling out rheumatological causes and Vitamin D deficiency. (*Id.*)

- October, 2009: Plaintiff was seen again by the Sterling Heights Medical Center. (*Id.* at 390.) That report indicates that Plaintiff was being evaluated by Dr. Kim for fibromyalgia. (*Id.*) The report also indicates that Plaintiff had a past history of Vitamin D deficiency, fibromyalgia, hiatal hernia, and various other ailments. (*Id.* at 390.) The report indicates that Plaintiff is "okay with activities of daily living." (*Id.*) And again, the physician found Plaintiff to be "well-developed, well-nourished, [and] in no acute distress." (*Id.*)

- December, 2009:  Dr. Kim saw Plaintiff again.  (*Id*. at 395.)  On the report, Dr. Kim stated that Plaintiff "has been diagnosed with fibromyalgia and she is still having the same pain all over her back and arms and legs with no change in presentation, no improvement, a constant, and not worsening."  (*Id.*)  In this report, Dr. Kim noted that Plaintiff stated that her pain was 8 out of 10.  (*Id.*)  The pain, Plaintiff stated, "was exacerbated by walking, standing, or sitting too long."  According to the report, Plaintiff reported that the symptoms included: incontinence, sleeping problems, weakness, numbness, tingling, fatigue, anxiety, depression, weight gain, and decreased libido.  (*Id.*)  In examining Plaintiff, Dr. Kim noted that Plaintiff did not appear distressed, was well-groomed, and that she appeared well-dressed and that she had good hygiene.  (*Id*. at 396.)

### 4. Plaintiff's testimony at her hearing

On February 16, 2010, the ALJ conducted Plaintiff's disability hearing.  The ALJ questioned Plaintiff about her daily activities, her work history, and her pain/disability.  As to her daily activities, Plaintiff stated that her normal day consisted of: supervising the children to get ready for school; driving them to school; cleaning up around the house; and prepping dinner.  (*Id*. at 39.)  She stated that these activities take her longer than they would a 'normal' person.  (*Id.*)  She also stated that sometimes she needed to lie down to rest.  (*Id.*)  She stated that she was able to drive.  (*Id.* at 42.)

Plaintiff stated that she last worked in 2004, as a secretary.  (AR at 34.)  She stopped working because her work schedule conflicted with her husband's.  (*Id.*)  Since she stopped working, Plaintiff stated that her pain has gotten worse.  (*Id*. at 40.)  She informed the ALJ that her back first caused her problems, but then her shoulders and knees started hurting.  (*Id.*)

When questioned by her attorney about her symptoms, Plaintiff answered that she had constant pain in her shoulder area, her neck, and in her spine.  (*Id.*)  She further maintained that her elbows caused her pain, and that she had tightness in her hips that prevented her from walking far.  (*Id.*)  She also answered that she was limited in terms of her ability to sit; she stated that she could

only sit for a short period of time before she had to stand up. (*Id*. at 43.) And sometimes she would have to lie down. (*Id.*) She again stated that she could only walk about twenty steps before she became out of breath. (*Id*.) She stated that she takes medication that causes side effects; side effects that include: slight dizziness, blurry eyes, and dry mouth. (*Id.*)

### 5. Medical expert's testimony

Dr. Alex Baudry Miller testified at Plaintiff's hearing as the medical expert. (AR at 44-45.) He stated that he did not personally examine Plaintiff, but that he reviewed Plaintiff's medical records. (*Id*.) After reviewing the record, he concluded that fibromyalgia was not supported in the record. (*Id*. at 48.) Dr. Miller, in depth, reviewed the evidence that he found supported his finding. (*Id*. at 45-54.)

### 6. Vocational expert's testimony

A vocational expert also testified at Plaintiff's hearing. She ultimately testified that Plaintiff could preform her past-relevant work. (*Id*. at 56.)

### 7. The ALJ's ruling

The ALJ determined that Plaintiff was not under a disability within the meaning of the SSA from January 1, 2005, through the date of his decision. (AR at 17.) The ALJ found that Plaintiff suffered from obesity and a vertobrogenic disorder. (AR at 19.) He found that those two impairments caused more than minimal functional limitation. (*Id.*)

The ALJ then addressed Plaintiff's possible diagnosis of fibromyalgia. (*Id.*) Taking that possible diagnosis, as well as Plaintiff's sleep apnea, history of carpal tunnel syndrome, and asthma, the ALJ concluded that these ailments did not result in severe work-related functional limitations and therefore, were nonsevere. (*Id.* at 20.)

**B.      Standard of review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**C.      Framework For Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

> **D.      Analysis**

As outlined above, Plaintiff raises three issues as to how the ALJ erred in denying her her disability and social security benefits. She argues that the ALJ did not properly consider her fibromyalgia, her obesity, and the side effects of her medication in his decision. The Court finds that the ALJ did not err in his decision and that substantial evidence supports his decision.

> **1.      Plaintiff did not prove that her alleged fibromyalgia was a severe**

**impairment that disabled her**

Plaintiff argues that the ALJ erred when he did not consider her alleged fibromyalgia as a severe impairment.[2] (Pl.'s Mot. for Summ. J. at 9.) Plaintiff also argues that the ALJ erred in stating that the fibromyalgia was only a "possible" diagnosis. (*Id.*) The Court rejects both of Plaintiff's arguments.

The ALJ held that Plaintiff's alleged fibromyalgia was not a severe impairment. (AR at 20.) Substantial evidence exists in the record that supports the ALJ's holding. As Defendant points out, an impairment is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions, such as "walking, standing, sitting," etc. 20 C.F.R. § 404.1521(b)(1). Basic work activities also include "[c]apacities for seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in routine work setting." 20 C.F.R. § 404.1521(b)(2)-(6). *See also*, 20 C.F.R. 416.921(b)(1)-(6).

More than a scintilla of evidence exists that suggests Plaintiff's fibromyalgia was not a severe impairment. At the hearing, Plaintiff testified that she was not significantly limited in her physical or mental abilities to do basic work activities. Plaintiff stated that she could still supervise her children to get ready for school, drive them to school, clean up around the house, and prepare

---

[2]Even if Plaintiff were conclusively diagnosed with fibromyalgia, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits; particularly . . . where there is substantial evidence to support the ALJ's determination that [the claimant's] fibromyalgia was either improving or, at worst, stable." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (citations omitted; emphasis in original) (and also quoting, "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not[.]").

dinner. (*Id*. at 39.)  Medical records also confirm that Plaintiff was "okay with activities of daily living." (*Id*. at 390.)

Even Dr. Kim, who saw Plaintiff in December, 2009, stated that, although she had fibromyalgia, her pain was not worsening.  (*Id*. at 395.)  Dr. Kim also noted that Plaintiff did not appear distressed, was well-groomed, well-dressed, and had good hygiene.  (*Id*. at 396.)

The Court therefore finds that Plaintiff's own testimony, in addition to the medical records, is tantamount to more than a scintilla of evidence that supports the ALJ's holding.

### 2. The ALJ properly considered Plaintiff's weight

Plaintiff argues that the ALJ failed to render any analysis regarding the impact of Plaintiff's obesity upon her claim of disability.  (Dkt. 13, Pl.'s Mot. for Summ. J. at 11.)  Defendant counters that the ALJ did properly consider Plaintiff's weight at every stage of his ruling; the Court agrees.  As Defendant points out, Social Security Ruling 02-1p guides the analysis of obesity in disability claims.

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. . . . The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessary have [] impairments.  It means that they are at greater than average risk for developing the other impairments.

SSR 02-1p.  Obesity can qualify as a disability when "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  *Id*.  But an impairment is not severe "if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities."  *Id*.

An ALJ is charged with doing "an individualized assessment of the impact of obesity on an

individual's functioning when deciding whether the impairment is severe." *Id*. But no set procedure for analyzing obesity is required by the ruling. *See Bledsoe v. Barnhard*, 165 F.App'x 408, 411 (6th Cir. 2006) ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").

Here, the ALJ did consider Plaintiff's obesity. At the hearing, the ALJ noted her then-current weight. (AR at 21.) He also noted that she used scooters to get around stores, but that she did not have a scooter of her own. (*Id.*) He pointed out that Plaintiff acknowledged that Plaintiff's pain in her back, shoulders, knees, hips, and elbows was a result from her weight. (*Id*. at 21-22.) The ALJ stated that Plaintiff "said she can only sit for short periods of time and can walk about 20 steps before becoming out of breath and needing to sit or lean against something to rest." (*Id*. at 22.) He observed that, despite Plaintiff's weight, she was able to help with "things around the house," get her children ready for school, do housework, prepare dinner, pick her children up from school, help with homework, spend time with her family, and put her children to bed. (*Id.*) The ALJ did observe that Plaintiff stated that sometimes these household activities took her longer than usual to do. (*Id.*) He also pointed out that Plaintiff stated that her impairments limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, use her hands, and concentrate. He noted that Plaintiff was "obese" and stated that he considered her obesity, "within the guidelines of [SSR] 02-01p." (*Id*. at 24.) The ALJ stated:

> While [Plaintiff] alleges being very limited in her daily activities due to her multiple pain complaints, I note that, both her testimony and written reports of daily activities . . . demonstrate that [Plaintiff] is actively engaged in running her household and attending to her family's needs. While she does allege requiring some help with meal preparation and some personal care, it appears that she is functioning quite well in her personal life. Additionally, I note that the claimant testified that she initially quit her job in order to take care of her children, not due to her impairments. . . . [Plaintiff's] lifestyle appears to be of her own choice, and not secondary to severe

11

disabling impairments.
(*Id.*)

Substantial evidence in the record supports the ALJ's determination that Plaintiff's obesity did not constitute a disability. Throughout the medical records, physicians noted Plaintiff's weight issues. Yet physicians also noted that Plaintiff "did not appear to be in any apparent distress," was "well-nourished, well-developed, and alert." (AR at 270, 281.) In 2009, one physician noted that Plaintiff's range of motion had decreased, but that physician also only recommended "conservative treatment" for her pain. (*Id.* at 358.) Again, even Dr. Kim, who recommended the fibromyalgia diagnosis, found that Plaintiff did not appear distressed, was well-groomed, and had good hygiene. (*Id.* at 369.)

The Court therefore finds that the ALJ properly considered Plaintiff's weight within the confines of the Social Security Ruling 02-01p.

### 3.     **The ALJ properly considered Plaintiff's side effects**

Plaintiff argues that the ALJ erred because he did not take into account, in his disability determination, the medications she takes. (Pl.'s Mot. at 14.) Plaintiff states that the ALJ was required to consider the side effects of any of her medications. (*Id.*) Again, Defendant argues that the ALJ properly considered the side effects that Plaintiff allegedly was having from her medications; and again, the Court agrees with Defendant.

Plaintiff alleges Social Security Ruling 96-7p requires the ALJ to consider the effect of her medications on her. (Pl.'s Mot. at 14.) That ruling requires the ALJ to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work." SSR 96-7p.

Defendant maintains that the ALJ did actually consider Plaintiff's medications. (Def.'s Mot.

12

for Summ. J. at 20.) In his written opinion, the ALJ noted that "[Plaintiff] testified that she was recently prescribed Lyrica and Cymbalta." (AR at 21.) The ALJ also noted that these medications have caused "some dizziness, watery eyes, dry mouth, and [] some concentration problems[.]" (*Id.*) The ALJ also inquired into Plaintiff's treatment plan at the hearing. (*Id*. at 37.) When asked about the medications, Plaintiff stated that "I do lose concentration. I have some dizziness, slight dizziness. It's not anything to speak of, and a little bit of - - I guess I would call it blurred vision, kind of like when your eye[s] water . . . .Dry mouth, excessive dry mouth." (*Id*. at 41.)

Here, the Court agrees with Defendant–the ALJ properly considered the side effects of Plaintiff's medications.

### E.    Conclusion

Because the Court finds that the ALJ properly analyzed Plaintiff's fibromyalgia argument and properly considered Plaintiff's weight and side effects from her medications, the Court recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted.[3] The Court further recommends that this case be dismissed.

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

---

[3]Defendant has also raised a residual functional capacity analysis in its brief; Plaintiff has not addressed that analysis. The Court has reviewed the argument, but does not find a discussion of the analysis necessary to this motion's resolution.

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 1, 2011            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon William Short and Counsel of Record on this date.

Dated: November 1, 2011            s/ Lisa C. Bartlett
                                   Case Manager