UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ANN DICKSON,   Case No. 11-10281

    Plaintiff,

v.   HON. AVERN COHN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MEMORANDUM AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (DOC. 16) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 14) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 13)

### I. Introduction

This is a social security case. Plaintiff Karen Dickson appeals from the final decision of the Commissioner of Social Security (Commissioner) denying her application for social security disability benefits. Dickson claims disability due to degenerative disc disease, asthma, arthritis, sleep apnea, obesity, carpel tunnel syndrome, and fibromyalgia.

The parties filed cross motions for summary judgment. The Court referred the motions to a Magistrate Judge (MJ) for a report and recommendation (MJRR). The MJ recommended that the Court deny Dickson's motion for summary judgment and grant the Commissioner's motion. (Doc.16). Now before the Court is Dickson's Objections to the MJRR. (Doc.17). For reasons that follow, the Court will adopt the MJRR; the Commissioner's Motion for Summary Judgment (Doc. 14) is **GRANTED**, Dickson's Motion for Summary Judgment (Doc. 13) is **DENIED**.

## II. Background

The material facts as gleaned from the administrative record and the parties' papers follow**.**  Dickson, who was forty-eight years old at the time of her hearing, stopped working in 2004 to care for her two school aged children.  Prior to working in the home full-time, Dickson worked as a bank teller, appointment clerk, office worker, and billing clerk.  When Dickson filed her claim, her home was in foreclosure and her husband had "employment problems."  However, at the time of the hearing Dickson indicated her husband was working.

### A. Treatment History

In 2000, doctors diagnosed Dickson with carpel tunnel syndrome (CTS).  Dickson underwent carpel tunnel release surgery on both hands.  The record does not reflect further treatment for CTS. Beginning in 2003, Dickson reported pain in her knees.  Dickson's doctors attributed her pain to degenerative joint disease, a condition aggravated by her morbid obesity.  However, an MRI of her knees showed no abnormalities.  In 2006, doctors diagnosed Dickson with obstructive sleep apnea.  Dickson reported positive results from treatment with a CPAP machine.[1]  Dickson also suffered from asthma attacks, which doctors treated with a prescription rescue inhaler.

In 2006, Dickson says she experienced an onset of chronic back pain.  In 2008, an MRI showed some disc bulges but no nerve root compression or herniation.  Her physician recommended "conservative treatment" and referred Dickson to a pain clinic

---

[1] CPAP stands for constant positive airway pressure.  This is a machine used to treat sleep apnea, which uses air pressure to prevent airway obstruction.

and to physical therapy.  Throughout the medical record doctors note that Dickson's weight is an issue.  At the time of the administrative hearing, Dickson was 5'5" and weighed 360-370 pounds, within the classification of "morbidly obese."

Dickson filed her claim for disability benefits February 13, 2008 alleging an onset of disability beginning January 1, 2005.[2]  In 2009, during the pendency of Dickson's claim she was diagnosed with fibromyalgia and a vitamin D deficiency.  Nevertheless, the Commissioner denied Dickson's claim for disability benefits.  Dickson then requested a hearing before an administrative law judge (ALJ).

## B. Administrative Hearing

### 1. Medical Expert

An ALJ held an administrative hearing to review Dickson's claim for benefits.  At the hearing, Dr. Walter Miller appeared as a state agency medical expert.  After review of Dickson's medical records and the opportunity to question her, Miller concluded the record did not support a finding of disability.  First, Miller explained that the record lacked evidence to support a finding of severe arthritis.  Miller said that many of Dickson's aches and pains were due to her obesity.  Further, there was insufficient medical evidence to support her complaints.  For example, Dickson complained of pain in her knees but MRIs showed no abnormalities.  In addition, she had full range of motion in her knees and normal strength in her extremities.

Next, Miller concluded the medical record did not support a diagnosis of fibromyalgia.  Miller opined the documented pain pattern was not characteristic of

---

[2] Dickson had social security disability insurance eligibility through 2006.  Many of the conditions Dickson cites as relevant to a finding of disability occurred after 2006.

3

fibromyalgia and the lack of radiculopathy suggested musculoskeletal pain instead. The ALJ did not make an affirmative finding that fibromyalgia was incorrectly diagnosed. Rather, in his decision the ALJ considered the functional limitations supported by the record.[3] Next, Miller evaluated the evidence related to Dickson's degenerative disc disease. Miller explained that MRIs documented some bulging discs but noted the lack of other serious symptoms. He concluded that the evidence did not support a finding of a disabling spinal condition. Finally, Miller noted that Dickson had no history of asthma issues requiring medical attention thus her condition was not severe. Miller concluded that Dickson was capable of sedentary work.

### 2. Vocational Expert

A vocational expert (VE) testified at the hearing. The VE described Dickson's past relevant employment as sedentary and low-skilled to semi-skilled. The VE testified a person with a sedentary residual functional capacity could perform Dickson's past relevant work. Dickson's attorney declined to question the VE.

### 3. Dickson's Testimony

During the hearing, Dickson testified about her daily activities, which included cleaning the house, preparing meals, and transporting her children to and from school. She testified that she completed these activities slowly and sometimes with the assistance of family members. Dickson reported she has no trouble following directions, paying attention, or interacting with authority figures. From this testimony, in

---

[3] The ALJ said "[t]he claimant's possible fibromyalgia, sleep apnea, history of carpal tunnel syndrome, and asthma do not result in severe work-related functional limitations and are therefore non-severe." The preceding suggests the ALJ did not reject the diagnosis, as Dickson contends, rather he found it was not severe. None of Dickson's doctors opined her fibromyalgia rendered her incapable of work.

4

addition to corroborating reports from her doctors, the ALJ determined she was functioning in her personal life and managing her household. To the extent that Dickson asserted limitations inconsistent with the description above, the ALJ did not find them credible.

### 4. Findings of the ALJ

The ALJ issued a decision denying benefits based on the medical evidence in the record, the opinion testimony of the medical expert, and Dickson's testimony regarding daily activities. According to the ALJ, the medical evidence demonstrated that Dickson suffered from two severe conditions, obesity and vertebrogenic disorder; the combination of which did not meet or medically equal a listed impairment.

### C. Appeal from the Administrative Decision

Dickson appealed the ALJ's decision to the Appeals Council (AC) who declined to review her case. A denial from the AC makes the decision of the ALJ the final decision of the Commissioner. Dickson filed the present suit seeking review of the Commissioner's decision to deny benefits. Both sides submitted motions for summary judgment. Dickson said the ALJ made three errors that require reversal. First, that the ALJ improperly found Dickson's fibromyalgia was not a severe impairment. Second, Dickson argued that the ALJ failed to consider her obesity. Finally, Dickson asserts the ALJ incorrectly assessed the side effects of her medication. The MJRR disagreed with all three assignments of error and recommended this Court grant the Commissioner's motion for summary judgment.

### D. Objections to Report and Recommendation

Dickson makes the same argument in her objections to the MJRR as she made in support of summary judgment. In addition, Dickson argues the MJ incorrectly equated her ability to complete activities of daily living with the ability to perform basic work activities. Lastly, Dickson argues that the ALJ incorrectly gave weight to the testimony of a non-treating physician.

### III. Legal Standard

Judicial review of a Social Security disability-benefits application is limited to determining whether the "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference with the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant

finds objectionable are reviewed de novo. 28 U.S.C. § 636(b)(1)(c); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. Discussion

### A. Fibromyalgia

#### 1. Treating Physician Rule

First, Dickson says that the MJ erred in finding that she is able to perform sedentary work. Dickson says the ALJ's decision inappropriately discounts her diagnosis of fibromyalgia. Dickson asserts that her treating physician's diagnosis of fibromyalgia should be given more weight than the opinion of Miller, a non-treating physician.[4] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. C.F.R. § 404.1527(d)(1)-(2).

Indeed, *Smith* states that the Commissioner should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined her." *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 404.1527(d)(1)) (internal quote marks omitted).

---

[4] In her papers Dickson argues that the ALJ's assessment was inconsistent with SSR 96-9p. SSR 96-9p deals with a residual functional capacity for less than a full range of sedentary work. This agency policy interpretation does not apply to Dickson's case nor would it help her if it did. The interpretation explains that an inability to complete a full range of sedentary work does not necessarily require a finding of disability. Dickson likely meant to reference SSR 96-2p-which she cited during oral argument; the Court will consider her argument based on SSR 96-2p the "treating physician rule."

However, the ALJ did not make a finding that Dickson did not suffer from fibromyalgia. Further, the ALJ's decision did not turn on whether Dickson's pain was musculoskeletal or neurological; it turned on the severity of the symptoms. In this respect, the ALJ followed the mandate of C.F.R. § 404.1527(d)(1)-(2) and evaluated the record as a whole. In light of all the evidence, the ALJ determined fibromyalgia was not a severe condition because, in addition to the testimony of the medical expert, Dickson reported a level of functioning inconsistent with a finding of disability. Despite Dickson's assertions at oral argument, the ALJ did not credit one medical source over another nor did he find Dickson did not suffer from fibromyalgia. Even if Dickson were correct, the result would be the same. The ALJ's decision did not depend on a diagnosis or require a resolution of conflicting medical testimony. In any event, all of the medical testimony referenced by Dickson during oral argument relates to her problems as diagnoised in 2009. However, Dickson makes no effort to explain how this evidence informs her condition prior to the expiration of her coverage in 2006.

Dickson's situation and objections are similar to a recent Sixth Circuit case, which affirmed the Commissioner's denial of benefits. *Blair v. Comm'r,* 430 Fed.Appx. 426, 429 (6th Cir 2011). Similar to Dickson, the claimant in *Blair* previously worked as a billing clerk. Blair claimed disability on the basis of obesity, diabetes, and fibromyalgia. Like Dickson, Blair testified she drove a car every day, picked up her children, shopped for groceries, managed household chores, and went to church. The ALJ found Blair's conditions met a listed impairment but that she was capable of completing past relevant work. The ALJ relied in large part on Blair's ability to complete daily activities and her own description her routine. The ALJ did not credit the testimony Blair's treating

physician that her fibromyalgia was disabling and found that she exaggerated her complaints of pain.

Similarly, the ALJ determined Dickson's descriptions of her functional capacity did not comport with a disabling condition. The ALJ must examine the record as a whole. While it is appropriate to accord weight to the opinion of a treating physician, here, no physician opined that Dickson's fibromyalgia was disabling. The Court agrees that the Commissioner's characterization of Dickson's residual functional capacity was within the allowable "zone of choice" and that it was supported by substantial evidence.[5]

### 2. Activities of Daily Living

Next, Dickson argues that the ALJ incorrectly equated her ability to complete activities of daily living with an ability to complete basic sedentary work activity. An assessment of the claimant's daily activities is a proper factor for the ALJ to consider. *Bartyzel v. Comm'r*, 74 Fed.Appx. 515, 525 (6th Cir. 2003). Dickson's testimony indicated she ran her household and personal affairs. The ALJ observed:

> [i]n a Function Report dated February 28, 2008, the claimant describes a typical day as supervising her children and helping them get ready for school, getting herself washed and dressed, driving the kids to school, preparing foods for dinner, housework, bill paying, phone calls, shopping, preparing an afterschool snack for the kids, picking them up from school, going through their backpacks for agendas, homework, projects, etc., preparing dinner with help from the family, spending time with family and then going to bed. She states that she cares for her husband, three children, and two dogs…She is able to handle money. She lists her hobbies as spending time with her family, crafts, drawing, gardening (flowers, vegetables, and herbs), sewing, readings, sports, and games

---

[5] Even if the ALJ classified Dickson's fibromyalgia as severe, this would not change the result of the decision. The ALJ found Dickson's functional capacity was consistent with sedentary work. The determination of functional capacity turned on her residual abilities, not the whether her fibromyalgia did or did not rise to the level of severe. Dickson's real contention is that the ALJ incorrectly found her to be capable of sedentary work.

> with her family. The claimant state that she goes to church and grocery shopping on a regular basis.

Dickson testified that she completed these activities slowly and with the assistance of family members. She shops using a scooter. She needs help and activities take her longer to complete than they otherwise would. Among other things, she has difficulty lifting, squatting, bending, walking, and climbing stairs. The ALJ found her descriptions of her functioning inconsistent with a finding of disability.

Dickson raised her diagnosis of depression as a condition overlooked by the ALJ. However, there is nothing in the record to suggest she ever sought or received treatment for depression. The ALJ may properly discount claims unsupported by the medical evidence.

Even if her description could also support a contrary conclusion, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). As discussed above, there is substantial evidence on the record to support the ALJ's determination of Dickson's functional capacity. The ALJ then relied on the testimony of the VE who testified someone capable of sedentary work could complete Dickson's past relevant work.

### B. Evaluation of Obesity

Dickson's second objection argues that the ALJ did not consider Dickson's obesity in determining her residual functional capacity. There is substantial evidence to the contrary. First, Dickson's weight problem is well documented in her medical records, which the ALJ considered and discussed at length. The ALJ also made a

10

specific finding related to obesity; Dickson's obesity was a severe condition, although not disabling. Moreover, the decision explained, "I have considered claimant's obesity, within the guidelines of Social Security Ruling 02-01p in reaching the residual functional capacity outlined in this decision." This objection is without merit.

### C. Medication Side Effects

Dickson's final objection to the MJRR is that the ALJ did not consider the side effects of Dickson's medications. Dickson contends her medication causes difficulty concentrating and slight dizziness. However, Dickson also reported she "has no problem paying attention and is able to follow written and spoken instructions well." This description was not overlooked by the ALJ, as he quoted it in his decision. The ALJ also explained he did not fully credit Dickson's testimony regarding the extent of her limitations because, among several other reasons, it was inconsistent with her other testimony related to her abilities and duties in the home. There is substantial evidence to conclude the side effects of Dickson's medications were not disabling.

**SO ORDERED.**


Dated:  January 23, 2012              s/Avern Cohn
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Monday, January 23, 2012, by electronic and/or ordinary mail.

                                      s/Julie Owens
                                      Case Manager, (313) 234-5160